```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

ASSOCIATED PUMP & SUPPLY CO.,              CIVIL ACTION
LLC

VERSUS                                     NO: 14-9

KEVIN P. DUPRE, ET AL                      SECTION: "J" (2)
```

### ORDER & REASONS

Before the Court is Defendants Kevin P. Dupre ("Dupre"), Bayou Rain and Drain Pump and Supply, LLC ("Bayou Rain and Drain"), and Infinity Pump and Supply, LLC ("Infinity Pump")(collectively, "Defendants")'s **Motion to Dismiss Under Rule 12(b)(6) (Rec. Doc. 9)**, Plaintiff Associated Pump & Supply Co., LLC ("Associated Pump")'s opposition thereto, and Defendants' reply memorandum. (Rec. Doc. 11) Defendants' motion was set for hearing on March 26, 2014, on the briefs. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that Defendants' motion should be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth more fully below.

1

**FACTS AND PROCEDURAL BACKGROUND**

This matter arises out of Plaintiff's claims against Defendants for breach of contract and conversion, and for violations of the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1405 ("LUTPA"), the Louisiana Trade Secrets Act, La. R.S. § 51:1431 *et seq.* ("LUTSA"), the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) ("CFAA"), and the Stored Communications Act, 18 U.S.C. § 2701 ("SCA").[1] For the purposes of the instant motion to dismiss, the Court will summarize the facts as alleged in Plaintiff's verified complaint. (Rec. Doc. 1)

Associated Pump employed Dupre as a salesman covering a territory that included numerous parishes within Louisiana. In connection with Dupre's employment with Associated Pump, he had access to "highly sensitive and confidential customer, product and trade secret information" that belonged to Plaintiff and to manufacturers associated with Plaintiff. (Rec. Doc. 1, p. 3, ¶ 8) Dupre's employment was memorialized though a Confidentiality and Non-Competition Agreement (the "Agreement") which: (1) prohibited Dupre from sharing Plaintiff's confidential and proprietary information; (2) obligated Dupre to return certain materials upon termination of his employment; and (3) imposed restrictive

---

[1] This Court has jurisdiction over Plaintiff's claims based on 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

covenants that restrained Dupre from certain competition and solicitation activities for a period of twenty-four months following the termination of his employment.[2] In addition to the Agreement, Dupre was also aware of Plaintiff's policies regarding non-disclosure of confidential information and trade secrets.

In March 2013, while Dupre was still employed by Plaintiff, Plaintiff alleges that Dupre started his own company, Defendant Bayou Rain and Drain, in order to compete with Plaintiff. Dupre then began discussions with Defendant Infinity Pump, while still employed by Plaintiff, and then resigned his employment with Plaintiff on August 12, 2013. Following his resignation, Dupre worked for Infinity Pump within the restricted parishes listed in the Agreement. Plaintiff further alleges that, without authorization, Dupre downloaded computer files containing Plaintiff's confidential information and trade secretes in order to use such information in his outside employment and that Dupre deleted from his work computer several files and documents belonging to Plaintiff.

As a result of these allegations, Plaintiff filed suit against Defendants on January 2, 2014. After receiving an extension of time to file responsive pleadings to the Complaint,

---

[2] Plaintiff attaches an unsigned agreement to its Complaint because, as will be discussed below, Dupre's signed Agreement allegedly cannot be located.

Defendants filed the instant motion in lieu of filing an answer on March 7, 2014.

## PARTIES' ARGUMENTS

### A. Count One: Breach of Contract

Defendants argue that Plaintiff's breach of contract claim should be dismissed because the Confidentiality and Non-Competition Agreement attached to the Complaint is unsigned and unenforceable and, by attaching the unenforceable agreement, Plaintiff negates its corollary allegations in Count One of its Complaint that are predicated on the existence of a valid Agreement. In support of this argument, Defendants cite to Action Revenue Recovery, L.L.C. v. eBusiness Group, L.L.C., No. 44,607 (La.App. 2 Cir. 8/19/09) 17 So.3d 999 wherein the Louisiana Second Circuit Court of Appeals affirmed the trial court's granting of defendant's *motion for summary judgment* on the grounds that the non-competition agreement was unsigned. Action Revenue Recovery, L.L.C. 17 So.3d at 1002 (fact that the agreement was not signed was undisputed) (emphasis added). Defendant further looks to Sally Beauty Co. v. Barney, 442 So. 2d 820, 823 (La. Ct. App. 1983) wherein the Court affirmed a partial summary judgment when the non-competition agreement was undisputedly unsigned.

Plaintiff contends that Defendants' motion should be denied

on this issue because its allegations are sufficient to put Defendants on notice of the claims against it. Plaintiff asserts that the Agreement attached to its Complaint was merely an example because the actual agreement that Dupre signed went missing after his departure. Plaintiff submits declarations of several of its employees, however, to prove that Dupre did sign the agreement, and it argues that it should be allowed to prove that fact at trial after having sufficient time to conduct discovery.

**B. Counts Two and Four: Trade Secret Claim and Conversion Claim**

Defendants contend that Count Two, which is a trade secret claim, and Count Four, which is essentially the same trade secret claim "repackaged" as a conversion claim, should be dismissed because Plaintiff's allegations are conclusory and unsupported by facts. Defendants point out that Plaintiff never identifies what the "secrets" are, why such secrets should be considered trade secrets, or what steps Plaintiff took to maintain the secrecy of the alleged trade secrets. Defendants rely primarily on Brand Coupon Network v. Catalina Marketing Corp., No. 11-556, 2012 WL 3903450 (M.D. La. Sept. 7, 2012 (Jackson, J.) wherein Chief Judge Brian Jackson granted a motion for summary judgment because, "in the absence of specific facts, the Court declines to accept or

5

formulate its own conclusory allegations from Plaintiff's bare pleadings." Brand Coupon Network, 2012 WL 3903450 at *5 (where plaintiff did not proffer any evidence that a trade secret existed except for their website name with was a freely viewable to the public.)

Plaintiff argues that its allegations are sufficient, as they allege that Dupre had access to Associated Pump's sensitive and confidential customer, product, and trade secret information and that Dupre agreed not to disclose such information, including but not limited to customer contact information, client relationship information, and pricing information. Plaintiff contends that further expansion on these issues is best dealt with during discovery.

**C. Count Seven: CFAA Claim**

Defendants contend that Plaintiff failed to allege sufficient facts to state a claim under the CFAA because Dupre's access was not "unauthorized" or "exceeding authorization." Defendants aver that, in Bridal Expo, Inc. v. van Florestein, 08-03777, 2009 WL 255862 (S.D. Tex. Feb. 3, 2009), the Court held there is no cognizable claim under the CFAA when an employee had access to and did in fact access certain information in the course of his employment, only to misuse the information later. Bridal Expo, Inc., 2009 WL 255862 at *8.

Plaintiff contends that, though some circuits have adopted a narrow application of the CFAA, the Fifth Circuit recognized in U.S. v. John, 597 F.3d 263, 272 (5th Cir. 2010) that an employee may exceed his authorized access through misuse of information by either severing the agency relationship through disloyal activity, or by violating employer policies regarding use of confidential information. Defendants dispute that John applies in civil cases.

**D. Count Eight: SCA Claim**

Defendants contend that the SCA does not apply because, under Fifth Circuit precedent, "an individual's computer, laptop, or mobile device is *not*" covered under the SCA. (Rec. Doc. 9-1, p. 11) Rather, the SCA is intended to apply to the service provider, such as the internet service provided or e-mail service provider, and the data temporarily stored therein. Defendants liken this case to Garcia v. City of Laredo, Tex., 702 F.3d 788, 791 (5th Cir. 2012) cert. denied, 133 S. Ct. 2859, 186 L. Ed. 2d 911 (U.S. 2013) wherein the Fifth Circuit held that an individual's text messages and pictures stored on her mobile phone do not fall under the protections of the SCA. Further, Defendant contends that the SCA does not apply to information stored on a hard drive, but rather only to information stored on the service provider's servers pending delivery or backup. Based

on these standards, Defendants aver that, even if Dupre downloaded data from Associated's computer while he was employed there, and even if he deleted that data, it is simply not a violation of the SCA. (Rec. Doc. 9-1, p. 12)

Plaintiff rebuts these contentions, arguing that Dupre violated the SCA by unlawfully accessing Plaintiff's *email system*, which is protected under that statute, forwarding those e-mails to his personal and Infinity accounts, and destroying the e-mails to prevent Plaintiff from accessing them.

Finally, Plaintiff contends that if the Court determines that any of its claims are insufficiently pled, it should be granted leave to amend.

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

## DISCUSSION

### A. Count One: Breach of Contract Claim

Based on Action Recovery and Sally Beauty Co., the Court recognizes that an unsigned non-compete and/or confidentially agreement may be unenforceable in many situations, and, in the context of more facts, may be a proper basis for granting of a motion for *summary judgment*. However, based on Plaintiff's contention that the Agreement is missing despite several eyewitness accounts of seeing Dupre sign such an agreement, it would be premature to entirely foreclose Plaintiff's ability to assert a breach of contract claim. Plaintiff should be permitted to flesh out the arguments advanced in its opposition and should be allowed to use the discovery period to further explore

potential evidence regarding the alleged disappearance of the agreement.

Plaintiff only asserts his allegations regarding the missing Agreement in its opposition, however, and the Court cannot consider only arguments made only in briefs when deciding a motion to dismiss for failure to state a claim.[3] By not presenting such facts, the Defendants are not able to appropriately assess the claims against it; therefore, the motion to dismiss will be granted on Count One. The Court will grant Plaintiff leave to amend it's Complaint to remedy this deficiency by including allegations that the agreement is unable to be located at this time.

**B. Counts Two and Four: Trade Secrets and Conversion**

**1. LUTSA Claim[4]**

Defendant cites to Brand Coupon Network wherein a court granted a motion to dismiss for failure to state a claim, finding

---

[3] In some instances, "documents attached to a motion to dismiss may be considered by a court if such documents are "referred to in the plaintiff's complaint and are central to the plaintiff's claim." Dorsey v. N. Life Ins. Co., No. 04-0342, 2005 WL 2036738 (E.D. La. Aug. 15, 2005)(Africk, J.). Here, however, the Court finds that the declarations attached to the motion to dismiss are not referenced in the Complaint, thus this rule does not apply.

[4] The essential elements of a claim pursuant to LUTSA are: (a) the existence of a trade secret; (b) a misappropriation of the trade secret by another; and (c) the actual loss caused by the misappropriation. In order to maintain a cause of action pursuant to LUTSA, "[t]he plaintiff has the burden of establishing both the existence of a legally protectable secret and a legal basis upon which to predicate relief." Dorsey, 2005 WL 2036738 at *13(internal citations omitted.)

that Plaintiff did not plead any specific facts about the trade secrets or how such secrets were confidential. Brand Coupon Network, 2012 WL 3903450 at *5 ("Plaintiff has proffered no evidence that a trade secret exists"). This Court, however, finds that the instant allegations go beyond those in Brand Coupon Network and are sufficiently specific. In Brand Coupon Network, the plaintiff's trade secret allegation was contained in a single paragraph, wherein plaintiff alleged that:

> Defendant's improper use of PLAINTIFF'S proprietary name and/or trade secrets violates [LUTSA] entitling PLAINTIFF to an injunction prohibiting DEFENDANTS from using or commercializing PLAINTIFF'S proprietary name or trade secrets and to the recovery of damages. PLAINTIFF is also entitled to recover attorneys' fees pursuant to statute.

(M.D. La. Case No, 11-556, Rec. Doc. 1-3, p. 8, ¶ 66). In that case, the plaintiff did not explain *why* it did not expand upon its conclusory allegations or provide anything beyond a conclusory snippet of boilerplate language. Here, however, Plaintiff avers in the Complaint that the exact nature of the alleged misappropriation is unknown because Dupre allegedly deleted several items from his computer before terminating his employment with Plaintiff. These allegations are sufficient to allow the Court to infer that Plaintiff may have a claim under LUTSA. Accordingly, Defendants' motion will be denied as to Count Two. Baker Petrolite Corp. v. Brent, No.. 09-7046, 2010

WL 924289, *2 (E.D. La. Mar. 9, 2010) (Zainey, J.)(denying motion to dismiss because plaintiff's "complaint alleges all of the elements of a LUTSA claim: a trade secret, misappropriation, and injury. The factual allegations are sparse and somewhat conclusory but Rule 8 continues to require only "a short and plain statement of the claim.")

### 2. Conversion Claim

As Defendants' arguments in support of dismissal of Plaintiff's conversion claim are predicated on the same basis as its trade secret arguments, the Court will also deny Defendants' motion as it relates to the conversion claim in Count Four.[5]

### C. Count Seven–CFAA Claim

A claim brought pursuant to 18 U.S.C. § 1030(a)(4) requires the plaintiff to prove the following elements: "(1) defendant has accessed a protected computer; (2) has done so

---

[5] Conversion is a delictual action which occurs when an individual (1) acquires possession of an object in an unauthorized manner; (2) removes the object from its original location and places it in another location with the intent to exercise control over the object; (3) the acquired possession is unauthorized; (4) the individual withholds possession from the owner of the object; (5) the object is either altered or destroyed; (6) the object is used improperly; or (7) the individual asserts ownership over the object. Dual Drilling Co. v. Mills Equip. Inv., Inc., 98-0343 (La. 12/1/98); 721 So. 2d 853, 857 (citing FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW § 1-2, at 3 (1998)). The action of conversion constitutes an act of ownership over another individual's property that is inconsistent with the true owner's rights. Louisiana Health Care Grp., Inc. v. Allegiance Health Mgt., Inc., 09-1093 (La. App. 3 Cir. 3/10/10); 32 So. 3d 1138, 1143.

without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud'; and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value." Bridal Expo, Inc., 2009 WL 255862 at *8 (S.D. Tex. Feb. 3, 2009)(internal citations omitted). The arguments advanced by both sides in this matter highlight the divide among courts in interpreting the second element of this statute.

Defendants cite to a line of cases which narrowly construe the statute to only apply when the alleged wrongful access was unauthorized at the time that the access occurred. Bridal Expo, Inc., 2009 WL 255862, *8; *accord* Power Equipment Maintenance, Inc. v. AIRCO Power Services, Inc., 953 F.Supp.2d 1290, 1296-97 (S.D. Ga. Jun. 28, 2013) (rejecting theory that an employee's "access was unauthorized because it was in violation of the fiduciary duties" owed to his employer.); *accord* WEC Carolina Energy Solutions LLC v. Miller, 687 F.3d 199, 204 (4th Cir. 2012) cert. dismissed, 133 S. Ct. 831, 184 L. Ed. 2d 645 (U.S. 2013) (CFAA does not apply "to the improper *use* of information validly accessed.") Plaintiff, however, points to a Fifth Circuit case recognizing that liability under the CFAA arises when an employee's access exceeds the intended use of the system or when the access is

"in violation of an employer's policies and is part of an illegal scheme." John, 597 F.3d at 272-73. In John, which is a criminal case brought under the CFAA, the Fifth Circuit upheld the defendant's conviction upon the finding that, though the defendant was authorized to view and print all of the information that she accessed, she exceeded her authorized access when she, with full knowledge of company policies prohibiting the misuse of internal computer systems, "accessed account information for individuals whose accounts she did not manage, removed this highly sensitive and confidential information from Citigroup premises, and ultimately used this information to perpetrate fraud on Citigroup and its customers." Id. (noting that, though it does not find that violating a confidentiality agreement should always give rise to criminal liability, "an employment agreement can establish the parameters of authorized access.")

Defendants argue that John is completely inapposite because it is a criminal case and its holding is "expressly" limited to the criminal context. Defendants overlook, however, the fact that the John Court includes a well-reasoned, general discussion of the meaning of "exceeds authorized access" with references to CFAA cases in civil contexts. Id. at 271-273. While it is true that the precise holding in John–that a

computer user "has reason to know" that he or she is not authorized to access data or information when her actions are in furtherance of a criminally fraudulent scheme-is specifically applicable in the criminal context, the reasoning that the Court applied in reaching that conclusion informs this Court on how the Fifth Circuit would treat the instant matter. Id. at 272.

In John, the Fifth Circuit discusses two civil cases: EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577 (1st Cir. 2001) and LRVC Holdings LLC v. Brekka, 581 F.3d 1127, 1134-35 (9th Cir. 2009). In its discussion, the John Court indicates approval of the First Circuit's holding in EF Cultural Travel BV that, in a civil context, "because of the broad confidentiality agreement, [the former employees'] actions 'exceed[ed] authorized access' within the meaning of 1030(a)(4)." Id. citing EF Cultural Travel BV, 274 F.3d at 583 (noting that, though the Fifth Circuit may not apply this standard in the criminal context, it agrees that "the concept of 'exceeds authorized access' may include exceeding the purposes for which access is authorized.") To the contrary, the John Court indicates at least partial disagreement with the LRVC Holdings LLC wherein the Ninth Circuit "rejected the argument that one who is authorized to obtain information

15

stored in a computer exceeds authorized access within the meaning of 18 U.S.C. 1030(a)(2) 'if the defendant breaches a state law duty of loyalty to an employer' in accessing and using that information 'to further his own competing business." Id. at 273 citing LRVC Holdings LLC, 581 F.3d at 1134-35. The John Court noted that it "may have a different view [than the Ninth Circuit] of how 'exceeds authorized access' should be construed," but then did not have to fully develop this disagreement because the facts in John did not so require. John, 597 F.3d at 273.

Based on the discussion in John, which was promulgated by the Fifth Circuit after a district court rendered the opinion in Bridal Expo, Inc., the Court finds that the Fifth Circuit may recognize a CFAA claim, such as the claim in EF Cultural Travel, where there is a broad confidentiality agreement to delineate the parameters of authorized access. Therefore, taking Plaintiff's allegations as true—that there was an Agreement and Dupre accessed and misused information in contravention of the Agreement—Plaintiff states a claim for civil liability under the CFAA, and Defendants' motion to dismiss will be denied as to Count Seven.

   **D. Count Eight: SCA Claim**

"[F]or, Defendants to be liable under the SCA, they must

have gained unauthorized access to a facility through which electronic communication services are provided (or the access must have exceeded the scope of authority given) and must thereby have accessed electronic communications while in storage." Garcia, 702 F.3d at 791. "[T]he statute envisions a *provider* (the ISP or other network service provider) and a *user* (the individual with an account with the provider), with the *user's communications in the possession of the provider*." Garcia v. City of Laredo, Tex., 702 F.3d at 793. In K.F. Jacobsen & Co., Inc. v. Gaylor, 947 F. Supp. 2d 1120, 1126 (D. Or. 2013), for example, a court rejected the theory that employer-issued computers are "electronic communication services." K.F. Jacobsen & Co., Inc., 947 F. Supp. 2d at 1124. The court discussed that, when a person or entity engages the services of a electronic communication service provider, such as an internet service provider ("ISP"), and then allows third parties to use personal computers to access that service, the "relevant service is Internet access, and the service is provided through ISPs or other servers, not through Plaintiffs' PCs." Id. at 1126. Therefore, there is no claim under the SCA between the user and the third party, but rather the claim that could exist would be between the internet service provider and the user. Id.

17

Here, Plaintiff alleges that Plaintiff "provides an electronic communication service to its employees, and Dupre, in conspiracy with [Bayou Rain and Drain] and/or [Infinity Pump], intentionally and willfully accessed [Associated Pump]'s stored electronic communications without authorization and obtained/and or altered them in violation of [the SCA]." (Rec. Doc. 1, p. 19, ¶ 81) Given the complexity of elements of a *prima facie* case under the SCA, the Court finds that Plaintiff's allegations are conclusory and fail to state a claim. Plaintiff does not allege what the "electronic communication service" is, thus the Court is not capable of determining whether Plaintiff is truly a provider of the service, or whether Plaintiff is simply a uses as was the case in K.F. Jacobsen. In its opposition, which the Court re-iterates it will not consider, Plaintiff contends that the service at issue is "e-mail service," but even if the Court could consider the opposition alone, it still does not allow the Court to decipher whether Plaintiff internally provided e-mail services, or whether they contracted with a provider, which is a critical determination in this matter. And, unlike in other Counts in Plaintiff's complaint, such as the trade secret claim where Plaintiff needs discovery to uncover all of the necessary information, this is information that should be

readily accessible to Plaintiff. Accordingly, the Court will dismiss Count Eight of Plaintiff's complaint; however, as it is feasible that the pleading may be remedied to state a claim, the Court will grant Plaintiff leave to amend its Complaint for this Count.

Accordingly,

Defendants Kevin P. Dupre, Bayou Rain and Drain Pump and Supply, LLC, and Infinity Pump and Supply, LLC's **Motion to Dismiss Under Rule 12(b)(6) (Rec. Doc. 9)** is **GRANTED IN PART AND DENIED IN PART.**

**IT IS ORDERED** that Counts One and Eight of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend Counts One and Eight of its Complaint. The amended complaint must be filed **within thirty (30) days of this order**. Failure to timely file an amended complaint will result in the dismissal of Counts One and Seven with prejudice.

**IT IS FURTHER ORDERED** that Defendants' motion is **DENIED** in all other respects.

New Orleans, Louisiana this 3rd day of April, 2014.

                                          CARL J. BARBIER
                                          UNITED STATES DISTRICT JUDGE